OCTOBER AND NOVEMBER TERM, 1882, No. 53.     OCTOBER 16, 1882.

# Arthurs *et al. vs.* Weisley.

A clause in a will directing the executors to convey certain real estate in the name of the testator, the funds for the purchase of which had been given by another, to that person in fee simple " as soon as she shall pay over to my said executors the balance due, as will appear in the accounts on my books," is so clear a recognition of the trust that it must preclude all attempts to set up the statute of limitations to defeat it, even if the will were subsequently revoked by marriage and birth of issue.

Before SHARSWOOD, C. J.; MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas No. 2 of *Allegheny County.*

Ejectment, commenced April 18, 1881, by Eleanor Weisley against Willa Arthurs, widow of Addison Arthurs, and W. A. Lewis, guardian of Addison E. Arthurs, minor child of Addison Arthurs, deceased, for the recovery of a three-story brick house, situated in the third ward of the city of Pittsburgh, Pa.

On the trial before KIRKPATRICK, J., the following facts appeared : In the year 1871, the plaintiff desired to purchase the property in dispute, then belonging to David Sands. Sands refused to make sale to her. She then

called upon defendants' testator, who agreed to negotiate the purchase for her, take the deed in his own name, and execute a bond and mortgage in his name to secure the unpaid portion of the consideration. The hand-money, amounting to $1,200, was given by the plaintiff to him, and he paid it to Sands. The price agreed upon for the house was $3,000.

*Robert Arthurs*, a brother of the testator, testified:

"About the time of this purchase, he (testator) came and told me what he proposed to do; that this lady wanted to buy this house, and wanted him to take it in his name. He gave me the reasons why she wanted it taken in his name. I rather objected to it, and told him I didn't like him to be putting his money into a house of that kind, and he said he didn't propose to put any of his money in it, that she would furnish all the money, and she wanted it for reasons of her own. She thought that it shouldn't be in her name; that she couldn't own it and have any degree of comfort at all, and he thought that there was no risk on his part, and he proposed to do it; he got me to draw the title papers, which I did.

"Q. You say that he gave the reasons why she couldn't own it; what were those reasons?

"A. The reasons he stated were, that she belonged to an unfortunate class, and if she had property in her own name she would be eternally raided by the police and black-mailed, and couldn't own it; they wouldn't permit any woman of her standing to own property without taking all the money that she would have."

April 4, 1871, Arthurs executed a will in which he devised, *inter alia,* as follows:

"In relation to a three-story brick house, situate in the third ward, Pittsburgh, Pa., fronting on an alley running at right angles with Cherry alley and immediately in the rear of the house occupied by Dr. Walters, I direct that my executors shall convey the same in fee simple to Eleanor Weisley as soon as she shall pay over to my said executors the balance due, as will appear in the accounts on my books."

After the date of the will, Arthurs married, and had issue born not provided for in it. He died September 29, 1880.

January 24, 1882, the jury rendered a special verdict, as follows:

"We find that the plaintiff furnished to Dr. Arthurs the money with which he paid for the property in dispute, to wit: $3,000, which was paid as follows: $1,200

[Arthurs *et al. v.* Weisley.]

in August, 1872, the date of the purchase; $820 in January, 1873; $515, July 11, 1873; and $544, the balance in full, March 16, 1874, said payments having been paid over by the said Arthurs to Sands when received by him or within a few days thereafter.

"We find further that at the time of the purchase, in August, 1872, said Arthurs took possession of said property and held the same until his death, and that since that date it has been in the possession of the defendants; but that said Arthurs, during his lifetime, never disclaimed the trust nor held adversely to plaintiff. Upon these facts, we find under the instruction of the Court for the plaintiff for the property in dispute, with six cents damages and costs, subject, however, to the opinion of the Court on the question of law reserved, to wit: those (that) raised by defendants' fifth point.

"If the Court should be of opinion that the law is with the plaintiff, then judgment to be entered on the verdict; but if the Court should be of opinion that the law is with the defendants, then judgment to be entered for the defendants *non obstante veredicto.*"

The fifth point of the defendant, referred to in the special verdict, was:

"That even if plaintiff has shown a resulting trust in her as to the property in suit, such trust accrued more than five years before action brought to enforce it, and there can be no recovery here." This was refused *pro forma* and reserved.

February 18, 1882, the Court entered judgment on the verdict, and the point reserved in favor of plaintiff.

The defendant then took this writ of error, assigning for error the entry of the judgment.

*C. C. Montooth* and *S. A. McClung* for plaintiff in error.

It cannot be disputed that there was a resulting trust, but under the act of April 22, 1856, no action could be maintained to enforce that trust.

Plaintiff's rights were complete in March, 1874, and she then had five years in which to bring suit: Clark *v.* Trindle, 52 Pa. St., 492; Best *v.* Campbell, 62 Pa. St., 476; Douglass *v.* Lucas, 63 Pa. St., 9.

*W. C. Moreland* for defendant in error.

The provision in the will is a declaration of trust under the statute.

OCTOBER 25TH, 1882.—PER CURIAM: We are of the

opinion that the clause contained in the last will of Dr. Arthurs was so clear and unequivocal a recognition of the trust in favor of the plaintiff below that it must preclude all attempts to set up the statute of limitations to defeat it. Under the circumstances, even if the will were revoked, that clause, as the recognition of an existing equity, would still be effectual.

Judgment affirmed.